PEOPLE *v.* BROWN.

1. WEAPONS—REGULATION—CONSTITUTIONAL LAW—POLICE POWER.
   State has police power to reasonably regulate right to bear arms (Const. art. 2, § 5).

2. SAME—RIGHT TO BEAR ARMS.
   Constitutional right to bear arms is not limited to militiamen nor military purposes, but extends to every person, including foreigners, right to possess revolver for legitimate defense of person and property, subject, however, to valid exercise of police power of State to regulate carrying of firearms.

3. SAME—CHARACTER AND USE OF WEAPONS MAY BE RECOGNIZED.
   Police power of State to regulate bearing of arms is not restricted to establishment of conditions under which all sorts of weapons may be privately possessed, but it may take account of character and use of weapons and interdict those whose customary employment by individuals is to violate the law.

4. SAME—REGULATION—CURBING CRIME—CONSTITUTIONAL LAW.
   3 Comp. Laws 1929, §§ 16751, 16753, relative to manufacturing, selling, possessing, and carrying firearms or dangerous weapons is within reasonable and constitutional exercise of police power of State to curb crime, and does not infringe constitutional right of individuals to bear arms (Const. art. 2, § 5).

5. CRIMINAL LAW—HABITUAL OFFENDER STATUTE.
   Charge of habitual offender under 3 Comp. Laws 1929, § 17341, includes both identity of person alleged to have committed other felonies and fact of prior convictions.

6. SAME—PLEA OF GUILTY.
   Acknowledgment by defendant that he was person charged with fourth felony in supplemental information under 3 Comp. Laws 1929, § 17341, was insufficient plea of guilty to warrant conviction, where record does not show compliance with statutory duty of court to inform defendant of his rights nor plea of guilty to charge.

The question as to constitutional right to bear arms, see annotation in 3 L. R. A. (N. S.) 168; 20 L. R. A. (N. S.) 1007; 36 L. R. A. (N. S.) 115; L. R. A. 1917C, 63.

Error to Jackson; Simpson (John), J. Submitted January 15, 1931. (Docket No. 144, Calendar No. 34,893.) Decided February 27, 1931.

Bernard Brown was convicted of possessing a dangerous weapon and of a fourth felony. Affirmed as to possession of a dangerous weapon. Reversed as to fourth felony.

*Frank L. Blackman,* for appellant.

*Paul W. Voorhies,* Attorney General, *H. D. Boardman,* Prosecuting Attorney, and *Owen Dudley,* Assistant Prosecuting Attorney, for the people.

FEAD, J. Defendant was convicted on both counts of an information charging him (a) with carrying a dangerous weapon, a blackjack, in an automobile, 3 Comp. Laws 1929, § 16753, and (b) with possessing and having in possession a blackjack contrary to the provisions of section 3, Act No. 206, Pub. Acts 1929 (3 Comp. Laws 1929, § 16751). He and another man had the blackjack and a rifle in an automobile. Supplemental information was filed, and, as on plea of guilty, he was convicted of being a fourth offender and sentenced to life imprisonment.

Defendant contends that the statutes under which he was convicted are invalid as contravening section 5, art. 2, of the State Constitution, which reads:

"SEC. 5. Every person has a right to bear arms for the defense of himself and the State."

The penalty for the violation of each statute is the same. Section 16751 includes the offense charged as under section 16753. If the former is constitutional, the latter must be, if and in so far as it is applicable to the weapon herein involved.

Section 16751 reads in part:

"SEC. 3. It shall be unlawful within this State to manufacture, sell, offer for sale or possess any machine gun or firearm which can be fired more than sixteen times without reloading or any muffler, silencer, or device for deadening or muffling the sound of a discharged firearm, or any bomb, or bomb shell, blackjack, slung shot, billy, metallic knuckles, sand club, sand bag, or bludgeon or any gas ejecting device, weapon, cartridge, container, or contrivance designed or equipped for or capable of ejecting any gas which will either temporarily or permanently disable, incapacitate, injure or harm any person with whom it comes in contact."

The statute applies to all persons except peace officers, certain manufacturers, military, and licensed persons, and contains no limitations of place, time, purpose, or use. It prohibits the possession of the enumerated weapons by anyone, other than an excepted person, in private as well as in public, in the home or elsewhere, and whatever the purpose and contemplated use.

It is generally recognized that the constitutional declaration, in both Federal and State constitutions, of the right to bear arms had its origin in the fear of the American colonists of a standing army and its use to oppress the people, and in their attachment to a militia composed of all able-bodied men. Probably the necessity of self-protection in a frontier society also was a factor.

Some courts have been so impressed with the historical background that they have held that the constitutional protection covers the bearing of such arms only as are a customary part of the equipment of a militiaman; and, in *City of Salina* v. *Blaksley,* 72 Kan. 230 (83 Pac. 619, 3 L. R. A. [N. S.] 168, 115

Am. St. Rep. 196, 7 Ann. Cas. 925), it was decided that the legislature may prohibit the bearing of arms anywhere except in a military organization provided for by law. It is interesting to note that pistols and revolvers seem to have given these courts trouble in the application of the militia test. On the other hand, some courts, for various reasons, have extended the protection to weapons of all descriptions. The authorities cannot be reconciled except in respect of the proposition that, regardless of the basis of the right to bear arms, the State, nevertheless, has the police power to reasonably regulate it. 28 Harvard Law Review, 473; *Aymette* v. *State,* 21 Tenn. 154; *Nunn* v. *State,* 1 Ga. 243; *Ex Parte Thomas,* 1 Okla. Cr. 210 (97 Pac. 260, 20 L. R. A. [N. S.] 1007); 40 Cyc. p. 853; 14 L. R. A. 600; 32 L. R. A. 606; 3 L. R. A. (N. S.) 168; 20 L. R. A. (N. S.) 1007; 36 L. R. A. (N. S.) 115; L. R. A. 1917C, 60, and notes.

When the bulwark of State defense was the militia, privately armed, there may have been good reason for the historical and military test of the right to bear arms. But in this State the militia, although legally existent, and composed of all able-bodied male citizens of Michigan and those of foreign birth who have declared their intention to become citizens, 1 Comp. Laws 1929, § 629, is practically extinct, and has been superseded by the National guard and reserve organizations. If called to service the arms are furnished by the State, 1 Comp Laws 1929, § 633. In times of peace the militia, as such, is unarmed and the historical test would render the constitutional provision lifeless.

The protection of the Constitution is not limited to militiamen nor military purposes, in terms, but extends to "every person" to bear arms for the "defense of himself" as well as of the State. This

includes the right of a foreigner to possess a revolver for the legitimate defense of his person and property, subject, however, to the valid exercise of the police power of the State to regulate the carrying of firearms. *People* v. *Zerillo,* 219 Mich. 635 (24 A. L. R. 1115).

Some arms, although they have a valid use for the protection of the State by organized and instructed soldiery in times of war or riot, are too dangerous to be kept in a settled community by individuals, and, in times of peace, find their use by bands of criminals and have legitimate employment only by guards and police. Some weapons are adapted and recognized by the common opinion of good citizens as proper for private defense of person and property. Others are the peculiar tools of the criminal. The police power of the State to preserve public safety and peace and to regulate the bearing of arms cannot fairly be restricted to the mere establishment of conditions under which all sorts of weapons may be privately possessed, but it may take account of the character and ordinary use of weapons and interdict those whose customary employment by individuals is to violate the law. The power is, of course, subject to the limitation that its exercise be reasonable and it cannot constitutionally result in the prohibition of the possession of those arms which, by the common opinion and usage of law-abiding people, are proper and legitimate to be kept upon private premises for the protection of person and property.

We find no decisions in point upon an identical constitutional provision, but in *People* v. *Persce,* 204 N. Y. 397 (97 N. E. 877), it was held that the legislature may prohibit the possession of—

"instruments (a slungshot) which are ordinarily used for criminal and improper purposes and which

are not amongst those ordinary legitimate weapons · of defense and protection which are contemplated by the Constitution and the bill of rights.''

See, also, *People, ex rel. Darling*, v. *Warden*, 154 App. Div. 413 (139 N. Y. Supp. 277); *Andrews* v. *State*, 50 Tenn. 165 (8 Am. Rep. 8). And in *State* v. *Duke*, 42 Tex. 455, the court said:

''The arms which every person is secured the right to keep and bear (in the defense of himself or the State, subject to legislative regulation), must be such arms as are commonly kept, according to the customs of the people, and are appropriate for open and manly use in self-defense, as well as such as are proper for the defense of the State.''

The list of weapons in section 16751, *supra*, is significant and demonstrates a definite intention of the legislature to protect society from a recognized menace. It does not include ordinary guns, swords, revolvers, or other weapons usually relied upon by good citizens for defense or pleasure. It is a partial inventory of the arsenal of the ''public enemy,'' the ''gangster.'' It describes some of the particular weapons with which he wars on the State and reddens his murderous trail. The blackjack is properly included in the list of outlawed weapons. As defined in Encyclopædia Britannica, it is—

''a bludgeonlike weapon consisting of a lead slug attached to a leather thong. The more carefully constructed black jacks contain a spring within the handle which serves to ease the effect of the impact upon the wrist of the one who wields the weapon. The blackjack has the reputation of being a characteristic weapon of urban gangsters and rowdies.''

The statute does not infringe upon the legitimate right of personal or public defense but is within the

reasonable and constitutional exercise of the police power of the State to curb crime.

Defendant challenged the supplemental procedure, charging him with being a fourth offender, on motion for a new trial, on the ground that no plea of guilty had been entered by him and no trial had, as shown by the records of the court.

The statute, 3 Comp. Laws 1929, § 17341, requires (a) the court shall inform defendant of the allegations contained in the supplemental information, and (b) of his right to be tried as to the truth thereof according to law, (c) that defendant be required to say whether he is the same person as charged in the information, and (d) that he plead guilty or be convicted, before he may be sentenced under it. The charge of habitual offender includes both the identity of the person alleged to have committed other felonies and the fact of his prior convictions. .

The record of arraignment was:

"Bernard Brown, the defendant in this cause, having been duly arraigned at the bar in open court on a supplemental information charging fourth felony and the said information having been read to the defendant and the said defendant having been asked if he is the same person mentioned in the said information, and acknowledging that he is the same person, it is ordered now here that the said plea be, and the same is hereby accepted."

The record of sentence reads:

"Bernard Brown, the defendant in this cause, having been upon his plea of guilty convicted of the crime of fourth felony as appears by the record thereof," etc.

The statement of plea of guilty in the entry of sentence refers back to the record as made. The

record as made does not show a compliance with the statutory duty of the court to inform the defendant of his rights nor a plea of guilty to the charge. It shows no more than that defendant acknowledged he was the person charged in the supplemental information, not that he admitted being the person charged in the previous offenses alleged therein nor that he had been convicted thereof. In *People* v. *Palm,* 245 Mich. 396, the situation was different, as the record there recited that the defendant had pleaded guilty and that "said plea of guilty was voluntarily and understandingly tendered." It was not without some hesitation that the record was held sufficient in that case, as not affirmatively showing the statute had not been complied with. The ruling should not be extended. In this case, the record fails to show a plea of guilty covering the elements of the offense.

We appreciate that this ruling may seem technical, and, in the instant case, may have no greater result. than a retreading of formal ground. But the practice as outlined in the statute affords such opportunity for misunderstanding by a defendant, unless its effect is clearly explained to him, and the consequences of conviction of being a habitual offender are so serious that the procedure should be strictly pursued and the record of the court should show, in essentials at least, its observance.

The conviction by the jury is affirmed. The supplemental procedure and sentence are reversed and the cause remanded to the circuit court to pass sentence, without prejudice to such renewal of proceedings under the habitual criminal law as may be presented to it.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.