# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NICHOLAS MATTHEW ROSS,

Defendant-Appellant.

UNPUBLISHED
July 24, 2018

No. 336263
Wayne Circuit Court
LC No. 16-006612-01-FC

Before: CAMERON, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his three jury trial convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (person under 13 and defendant 17 years of age or older). Defendant was sentenced to 25 to 38 years' imprisonment for each conviction. We affirm defendant's convictions and sentences, but vacate the late penalty assessed by the trial court, and remand for entry of a corrected judgment of sentence.

## I. RELEVANT FACTS

This case arises out of defendant's sexual abuse of the then seven-year-old daughter of his former girlfriend. At the time of their relationship, defendant lived with his former girlfriend and her two daughters. The victim reported that during times where her mother had left her alone with defendant, defendant had "licked her pee-pee." The victim did not reveal the abuse to her mother until after defendant had moved out. The victim's mother did not report the abuse to the police at that time because the victim did not want to talk about it and defendant no longer lived in the home. However, the victim's mother did tell several friends.

Approximately three years later, the victim revealed the abuse during a Kids-TALK interview relating to allegations of abuse by one of her mother's subsequent boyfriends who had also lived in the home. During that interview, the victim stated that she would sit on the couch in the living room with her knees in the air and defendant would pull down her pants and underwear and lick her "private," which she explained was the area she used to go to the bathroom. The victim indicated that defendant had touched her more than two times while her mother was at work.

-1-

## II. DEFENDANT'S BRIEF ON APPEAL

## A. JUDICIAL MISCONDUCT

Defendant first argues that he was denied the constitutional right to a fair trial by the trial judge's misconduct in instructing the jury that the victim would be testifying truthfully. We disagree.

Defendant failed to preserve this issue by objecting to the trial judge's instruction regarding the victim's testimony. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Although "[t]he question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo[,]" *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015), because defendant failed to preserve this issue, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). As our Supreme Court announced in *Carines*,

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence. [*Id*. (citations and quotation marks omitted).]

Prior to beginning her trial testimony, the victim, who was still a young child at the time of trial, swore to tell the truth. The trial judge then asked the victim if she knew the difference between telling the truth and telling a lie, and she responded that she did. The victim agreed that telling a lie was a bad thing and she agreed that she would tell the truth. The trial judge then instructed the jury as follows:

> Now, ladies and gentlemen, the reason I asked the child those questions is that a child under the age of 12 really, cannot swear to tell the truth as we would normally associate with it. But that's the reason I asked her whether or not she knew the difference between telling the truth and telling a lie. So now I'm telling you that the child has agreed that she's going to speak the truth. So, please continue.

Defendant argues that this instruction was improper because the judge vouched for the credibility of the victim and invaded the province of the jury by finding that the victim would testify truthfully.

A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.

This inquiry requires a fact-specific analysis. A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality. Ultimately, the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors.

These errors must be considered within the context of a given case, i.e., the totality of the circumstances, to determine whether the judge demonstrated the appearance of advocacy or partiality on the whole. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Stevens*, 498 Mich at 170-172 (citations and quotation marks omitted).]

In *People v Houghteling*, 183 Mich App 805, 809; 455 NW2d 440 (1990), this Court explained that "[i]t is not error for the judge to examine the child witness in front of the jury to determine the child's competency to testify." This Court further concluded that there was no prejudice to the defendant in that case based on the exchange between the trial court and the child in which the trial court ruled that "the witness may testify in these proceedings based upon her promise to tell the truth." *Id*. at 809, n 2.

The trial judge's conduct in this matter is extremely similar to the trial judge's conduct in *Houghteling*. In *Houghteling*, the trial judge told the jury that the victim had "promise[d] to tell the truth," and, in this case, the judge told the jury that the victim had "agreed that she's going to speak the truth." See *Houghteling*, 183 Mich App at 809 n 2. Contrary to defendant's assertion, the trial judge did not vouch for the victim's credibility or make a finding that the victim would in fact tell the truth - the judge only stated that she had agreed to do so. Further, the trial judge's statement was consistent with M Crim JI 5.9, which provides: "For a witness who is a [young] child, a promise to tell the truth takes place of an oath to tell the truth." Moreover, the trial judge instructed the jury that "[if] you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Therefore, the trial court judge's statement did not pierce the veil of judicial impartiality or deny

-3-

defendant a fair trial.[1]  Accordingly, defendant fails to establish plain error affecting his substantial rights.

## B. ASSESSMENT OF LATE PENALTY

Next, defendant argues the trial court lacked statutory authority to impose a $260 late penalty where a due date for the penalties, fees, and costs was not provided on defendant's judgment of sentence.  We agree.

Again, defendant failed to preserve this issue by challenging the imposition of the late penalty at the time it was imposed.  See *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009) (stating that strictly legal challenges to the imposition of fees and costs under MCL 769.1k must be made when the trial court imposes the fee or will be considered unpreserved). Although the late penalty was imposed after sentencing, defendant could have filed a motion in the trial court challenging the imposition of the fee.[2]  Therefore, we review this constitutional issue for plain error affecting defendant's substantial rights.  *Carines*, 460 Mich at 763-764.

MCL 600.4803(1) provides:

> A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed.  The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing.  Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise.  The court shall order a specific date on which the penalties, fees, and costs are due and owing.  If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing.  A late penalty may be waived by the court upon the request of the person subject to the late penalty.

The register of actions provided by defendant on appeal supports defendant's claim that a 20% late penalty was imposed against him.  Under the section titled "Financial Information," it indicates that, on January 24, 2017, a "Transaction Assessment" of $260 was imposed.  Although the assessment is not expressly referred to as a "late penalty," as defendant argues, the amount

---

[1] With regard to the other factors, there is no indication that the judge's tone exhibited hostility or bias and defendant only alleges this one instance of misconduct, so the number of judicial interventions and whether there was an imbalance is not relevant.  See *Stevens*, 498 Mich at 175-177.

[2] Additionally, we note that defendant failed to file a request for waiver under MCL 600.4803(1). Because defendant does not argue the late penalty should be waived, but rather there was no statutory authority to impose the fine, we address his claim on the merits.

imposed ($260) was exactly 20% of defendant's court costs, which were $1,300. Therefore, there appears to be sufficient evidence that a 20% late penalty under MCL 600.4803(1) was imposed against defendant.

We agree with defendant's contention that the imposition of this late fee was unauthorized. The trial court left blank the due date for the penalties, fees, and costs on the judgment of sentence. Because the judgment of sentence did not assign a "specific date on which the penalties, fees, and costs are due and owing," the 56-day period never elapsed. MCL 600.4803(1). Therefore, the trial court lacked authority to impose the late penalty under the statute. Accordingly, we vacate the $260 penalty imposed by the trial court, and remand for the trial court to enter a corrected judgment of sentence that specifies a due date for the ordered costs and fees.[3]

### III. DEFENDANT'S STANDARD 4 BRIEF ON APPEAL

Defendant also raises several additional arguments in his Standard 4 brief on appeal. Although we do not find any to be meritorious, each is addressed herein.

### A. MCL 750.520H

In his Standard 4 brief on appeal, defendant argues that MCL 750.520h denied him the right to a fair trial by depriving him of the presumption of innocence and impermissibly shifting the burden of proof to him. Defendant further argues that MCL 750.520h denied him his right to a fair trial and his Sixth Amendment right to the effective assistance of counsel because it prohibited defense counsel from putting the prosecution's case to a meaningful adversarial test. We disagree.

Defendant failed to raise these issues in the trial court, and therefore they are unpreserved. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). However, we will review unpreserved constitutional issues for plain error affecting the defendant's substantial rights. *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014).

In *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002), this Court stated:

> [T]his Court adheres to the well-established rule that a statute is presumed to be constitutional and is so construed unless its unconstitutionality is clearly apparent. The fact that a statute may appear undesirable, unfair, unjust, or inhumane does not of itself render a statute unconstitutional and empower a court to override the Legislature. The Legislature, not the courts, should address arguments that a statute is unwise or results in bad policy. The party challenging the constitutionality of a statute bears the burden of proving its invalidity. [Citations omitted.]

---

[3] We note that MCL 769.1k(5) provides that the trial court "may provide for the amounts imposed under this section to be collected at any time."

"To determine whether a statute violates due process, the pertinent issue is whether the statute bears a reasonable relation to a permissible legislative objective." *In re Hamlet (After Remand)*, 225 Mich App 505, 521; 571 NW2d 750 (1997), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000).

MCL 750.520h provides that "[t]he testimony of a victim need not be corroborated in prosecutions under [MCL 750.520b and MCL 750.520g]." Defendant argues that this non-corroboration rule deprived him of the presumption of innocence and shifted the burden of proof to him. However, we conclude that contrary to defendant's assertions, there is nothing in the statutory language that affects the presumption of innocence or the prosecution's burden of proving the defendant's guilt beyond a reasonable doubt. Further, there is nothing in MCL 750.520h that prevents defendant from attacking the credibility of the victim on cross-examination.

Moreover, this Court has stated that the "anti-corroboration rule" "is designed to permit a verdict to withstand a challenge to the sufficiency of the evidence in a case in which the only testimony against the defendant is that of the complainant." *People v Norwood*, 70 Mich App 53, 57; 245 NW2d 170 (1976). MCL 750.520h is reasonably related to this permissible legislative objective and, therefore, does not violate due process. See *Hamlet*, 225 Mich App at 521. Accordingly, defendant fails to overcome the presumption that the statute is constitutional. See *People v Yanna*, 297 Mich App 137, 146; 824 NW2d 241 (2012) ("Statutes are presumed to be constitutional unless their unconstitutionality is clearly apparent and must be construed as constitutional if possible.").

Finally, with respect to defendant's claim that MCL 750.520h violates defendant's Sixth Amendment right to the effective assistance of counsel by prohibiting defendant from putting the prosecution's case to a meaningful adversarial test, we again note that MCL 750.520h does not prevent a defendant from cross-examining the victim. As stated by the Supreme Court of the United States in *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039; 80 L Ed 2d 657 (1984), "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." No such harm exists here. Through cross-examination of the victim, the prosecution's case may be put to a meaningful adversarial test. For example, in this case, trial counsel had the opportunity to cross-examine the victim and, therefore, put the prosecution's case to a meaningful adversarial test. Accordingly, MCL 750.520h does not deny this defendant, or any other defendant, the right to the effective assistance of counsel. Indeed, defendant's constitutional challenge to MCL 750.520h fails.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues he was denied the effective assistance of counsel when defense counsel failed to impeach the victim with her inconsistent testimony and then failed to question the victim regarding her false testimony. We disagree.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and

questions of law are reviewed de novo. *Id.* at 188. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, because defendant failed to raise this issue in an appropriate motion in the trial court, or more for a hearing pursuant to *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973), no factual record has been created on which this Court may evaluate defendant's claim of ineffective assistance of counsel. Accordingly, our review is limited to errors apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290, citing *Strickland*, 466 US at 694–696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that trial counsel should have impeached the victim's trial testimony (that the abuse happened more than two times) with her preliminary examination testimony (that the abuse happened more than five times). At the preliminary examination, the victim testified as follows:

*Q*. Okay. Now, did this happen one time?

*A*. No.

*Q*. How many times did it happen?

*A*. More than five.

*Q*. More than five. Can you tell me about another time it happened?

*A*. It was all the same thing.

\* \* \*

*Q*. . . . And did this happen on – all on one day or more than one day?

*A*. More than one day.

At trial, the victim testified as follows:

*Q*. Now, do you know how many times in your whole life, [defendant] did that to you?

-7-

*A.* No.

*Q.* Was it more than one?

*A.* Yes.

*Q.* More than two?

*A.* I believe so.

We reject defendant's claim that the victim's preliminary examination testimony and her trial testimony are inconsistent. The victim clearly testified that the incidents occurred on more than one day. Her statement that "[i]t was all the same thing" likely meant that the incidents involved the same acts. Moreover, as the prosecution points out, at trial, the victim was only asked whether the abuse happened more than two times. She was not asked whether it happened as many as or more than five times. Further, had defense counsel pointed out the alleged inconsistency, it may have led the victim to testify at trial to more instances of abuse, which could have been harmful to defendant. Defendant has failed to overcome the presumption that trial counsel declined to further question the victim regarding the number of incidents as a matter of sound strategy. See *Heft*, 299 Mich App at 83. Therefore, defendant fails to establish that trial counsel's performance was objectively unreasonable.

Defendant also argues that trial counsel should have questioned the victim regarding why she lied about not knowing her mother's friend, Brandi Langston. At trial, the victim did not recall a woman named "Brandi," but several witnesses, and defendant, all testified that Langston had lived with the victim and her mother, and had watched the victim and her siblings while their mother was working. Defendant argues that trial counsel should have asked the victim why she lied, which could have revealed motive and fabrication. However, while the victim did not recall Langston, there was nothing to suggest that she "intentionally lied," rather than forgot who Langston was and that Langston had lived with her. Further, defendant fails to overcome the presumption that defense counsel's decision to merely impeach the victim's testimony with the testimony of the other witnesses, rather than accuse her of lying in front of the jury, was sound. See *Heft*, 299 Mich App at 83. Therefore, defendant again fails to establish that trial counsel's performance was objectively unreasonable. Accordingly, we conclude that defendant's claims of ineffective assistance of counsel are without merit.

## C. PROSECUTORIAL MISCONDUCT

Finally, defendant argues that he was denied a fair trial due to the prosecutor's improper remarks during closing argument. We disagree.

Although defendant did raise a contemporaneous objection to the first alleged instance of misconduct, this issue is nevertheless unpreserved because defendant failed to request a curative instruction, and wholly failed to object to the second claimed instance of misconduct. *Solloway*, 316 Mich App at 201. Accordingly, we review defendant's unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Brown*, 294 Mich App at 382-383 (citations omitted). "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

In closing argument, the prosecutor argued that defendant's stepfather, Raymond Akers, had "lied to the Sergeant and wouldn't tell him where [defendant] lived." Defense counsel objected, asserting that the prosecutor had mischaracterized the testimony because Akers had not lied. The trial court overruled the objection. The prosecutor continued:

> I'm allowed to continue with this. So he could have said to the Sergeant, yeah, [defendant] lives with us. He doesn't. He said, I'm not telling you where [defendant] lives. So here's a stepfather trying to protect his stepson from the police. So maybe he knew something, maybe [defendant] admitted it to him, I don't know; but that's certainly not in evidence.

With regard to the prosecutor's argument that Akers lied, the prosecution agrees that this was a mischaracterization because Akers testified that he refused to tell the police where defendant lived, but there was no evidence that he lied. Regardless, an inaccurate statement by the prosecutor does not require reversal where it is "isolated, brief, and did not affect the outcome of defendant's trial." *People v Unger*, 278 Mich App 210, 239; 749 NW2d 272, 294 (2008). In this case, the prosecutor's remark was brief and isolated. Further, although the trial court overruled trial counsel's objection, the prosecutor subsequently argued that Akers said, "I'm not telling you where [defendant] lives" rather than that he lied. Moreover, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence," and "jurors are presumed to follow their instructions." *Id*. at 237. Accordingly, the prosecutor's brief remark did not affect the outcome of defendant's trial. Defendant was not denied a fair trial by this remark.

With regard to the prosecutor's argument that Akers was protecting defendant because defendant may have admitted the crime to him, the prosecutor admitted that there was no admission "in evidence." Rather, the prosecutor was making an inference from the evidence. As noted, a prosecutor may argue reasonable inferences from the evidence. *Watson*, 278 Mich App at 588. Moreover, the trial court's instruction that the attorneys' statements and arguments were not evidence cured any error. See *Unger*, 278 Mich App at 237. Further, because a curative instruction, if requested, could have alleviated any prejudicial effect, any error did not deny defendant a fair trial or affect the outcome of the proceedings. *Id*. Therefore, reversal is not warranted. *Id*. at 235.

We affirm defendant's convictions and sentences, but vacate the late penalty assessed by the trial court, and remand for entry of a corrected judgment of sentence. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Peter D. O'Connell