PEOPLE v DEROCHE

Docket No. 304759. Submitted December 6, 2012, at Detroit. Decided January 29, 2013, at 9:00 a.m.

Craig Michael Deroche was charged with possession or use of a firearm by a person under the influence of alcoholic liquor, MCL 750.237. Police officers responded to a call involving a verbal altercation and were informed that defendant had been drinking, that there had been an argument, and that he had run into the woods. The police searched for defendant to check on his welfare, but they were unable to locate him. Two hours later, officers investigated a disturbance call at a home and were informed that defendant was in the house with a gun and that the witness had seen defendant in the house, but had not seen a gun. They were also informed by defendant's mother-in-law in the house that defendant no longer had the gun because she had taken and hidden it. A police officer spoke with defendant after he came downstairs, then arrested him for possession of a firearm while intoxicated. Defendant filed a motion in the 52-1 District Court to dismiss the charge as violating the Second Amendment of the United States Constitution and to suppress evidence as the result of an unlawful seizure. The court, Brian MacKenzie, J., dismissed the charge on the basis of the Second Amendment, but also concluded that the officer's continued presence in the house after the weapon was secured was unlawful. The prosecution appealed the dismissal in the Oakland Circuit Court. The circuit court, Colleen A. O'Brien, J., affirmed the dismissal without addressing the Second Amendment issue, concluding that the evidence was unlawfully seized in violation of the Fourth Amendment of the United States Constitution. The prosecution appealed, and defendant cross-appealed by leave granted.

The Court of Appeals *held*:

Both the United States and Michigan Constitutions grant individuals the right to keep and bear arms for self-defense, US Const, Am II; Const 1963, art 1, § 6. The core of the Second Amendment is the right of responsible citizens to use arms in defense of hearth and home, but that right is not absolute. Gun possession may be categorically regulated by classes of persons,

such as felons and the mentally ill. To determine whether a facially constitutional statute is unconstitutional as applied to a particular person, it must be determined (1) whether the challenged law burdens conduct that falls with the scope of the Second Amendment right as historically understood and (2) whether, using the intermediate scrutiny standard, the government could establish that there is a reasonable fit between the asserted substantial or important governmental objective and the burden placed on the individual. MCL 750.237, which prohibits a person from possessing or carrying a firearm when he or she is under the influence of intoxicating liquor, is a presumptively lawful regulatory measure because individuals under the influence of intoxicating liquor could pose a serious danger to society if permitted to possess or carry a firearm. Defendant's lawful possession of a handgun in his own home, with no evidence to suggest that it was to be used for an unlawful purpose, was protected by the Second Amendment. While preventing intoxicated individuals from committing crimes involving handguns is an important governmental objective, the infringement of defendant's right in this case was not substantially related to that objective. Defendant's possession of the gun was constructive rather than actual when the police officers entered the home. The government's legitimate concern is not that a person who has consumed alcohol is in the vicinity of a firearm but that he or she actually has it in his physical possession. The district court did not err by holding that MCL 750.237, as applied to defendant was unconstitutional.

Affirmed.

CONSTITUTIONAL LAW — FIREARMS — CONSTRUCTIVE POSSESSION WHILE INTOXICATED.

MCL 750.237 prohibits a person from possessing or carrying a firearm when he or she is under the influence of intoxicating liquor; an intoxicated individual may possess a firearm in her or her home without violating MCL 750.237 when the possession was constructive and there is no evidence that the individual was going to use the gun for an unlawful purpose; lawful constructive possession of a handgun in an individual's home while that individual is intoxicated is protected by the Second Amendment (US Const. Am II; Const 1963, art 1, § 6).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney,

*Thomas R. Grden*, Appellate Division Chief, and *Matthew A. Fillmore*, Assistant Prosecuting Attorney, for the people.

*The Law Offices of Steven W. Dulan* (by *Steven W. Dulan*) for defendant.

Before: JANSEN, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM. This case presents a question of first impression, namely whether the Second Amendment of the United States Constitution precludes a prosecution for possession or use of a firearm by a person under the influence of alcoholic liquor, MCL 750.237, when the prosecution's theory is one of constructive possession in the defendant's own home. We conclude that it does.

Two Novi police officers were dispatched to a call involving a verbal altercation. When they arrived at the scene, they were informed by a man identified as James Hamlin (a friend of defendant) that defendant had run off into the woods, that there had been an argument, and that defendant had been drinking. The officers searched the area for defendant to do a welfare check, but they were unable to locate him and ended their search.

Approximately two hours later, one of those officers, Officer Shea, along with other officers, was dispatched to a disturbance call at a home. Hamlin was again present, outside the home, and informed the officers that defendant was inside the house with a gun. But he also told Officer Shea that he could see defendant in the house, but did not see a gun.

The officers approached the house and spoke with defendant's mother-in-law at the door. The mother-in-law stated that defendant no longer had a gun and that she had taken it and hidden it in the house. She let the

officers in and showed them the gun that she had hidden in the bottom of a garbage can in the laundry room; the clip was found next to the gun. Officer Shea indicated that he wished to speak with defendant and was informed that defendant was upstairs.

The officers made their first contact with defendant while they were standing at the bottom of the stairs and defendant stood at the top of the stairs. Defendant initially refused to come down, but eventually complied with the officers' request. They stepped outside onto the front porch. Defendant was arrested for possession of a firearm while intoxicated.

Defendant moved in the district court both to suppress evidence on the basis of an unlawful entry into his home and to dismiss the charge under the Second Amendment. The district court conducted an evidentiary hearing, concluding that while there was evidence based on a blood alcohol test that defendant was intoxicated, no evidence was introduced to show that defendant was in actual physical possession of the gun. The district court dismissed the charge, primarily relying on the Second Amendment argument. But it also concluded that the officers' continued presence in the home after securing the weapon was unlawful.

The prosecution appealed the dismissal in the circuit court. The circuit court declined to address the Second Amendment issue, but agreed with the district court that there had been a Fourth Amendment violation and, therefore, concluded that the district court had properly dismissed the charge. The prosecution now appeals and defendant cross-appeals by leave granted.

We take the opposite approach to that of the circuit court. We decline to address the search question and instead affirm the district court on the basis of the Second Amendment.

Defendant argues that MCL 750.237, as applied to defendant, is unconstitutional because it violates his federal and state right to bear arms in his home for purposes of self-defense. We agree. We review de novo issues of constitutional construction. *People v Yanna*, 297 Mich App 137, 142; 824 NW2d 241 (2012). We presume statutes to be constitutional unless their unconstitutionality is clearly apparent and, if possible, the statute is to be construed as constitutional. *Id.* at 146.

Both the United States Constitution and the Michigan Constitution "grant individuals a right to keep and bear arms for self-defense." *Id.* at 142. The Second Amendment of the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." US Const, Am II.[1] Article 1, § 6 of the 1963 Michigan Constitution, which is Michigan's equivalent to the Second Amendment, states, "Every person has a right to keep and bear arms for the defense of himself and the state." "The Second Amendment is fully applicable to the states through the Fourteenth Amendment." *Yanna*, 297 Mich App at 142; see also *McDonald v Chicago*, 561 US ___; 130 S Ct 3020, 3050; 177 L Ed 2d 894 (2010). Therefore, we review this issue within the parameters of the United States Supreme Court's interpretation of the Second Amendment.

The Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." *Dist of Columbia v Heller*, 554 US 570, 592; 128

---

[1] In addressing whether the rights protected by the Second Amendment extended to individuals, the United States Supreme Court concluded, "There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an *individual* right to keep and bear arms." *Dist of Columbia v Heller*, 554 US 570, 595; 128 S Ct 2783; 171 L Ed 2d 637 (2008) (emphasis added).

S Ct 2783; 171 L Ed 2d 637 (2008). "At the 'core' of the Second Amendment is the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.' " *United States v Barton*, 633 F3d 168, 170 (CA 3, 2011), quoting *Heller*, 554 US at 635. In striking down a statute that banned the possession of handguns in the District of Colombia, the Supreme Court held:

> The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for [the] lawful purpose [of self-defense]. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for the protection of one's home and family" would fail constitutional muster. [*Heller*, 554 US at 628-629 (citation omitted).]

Thus, the Supreme Court concluded that the "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Id.* at 635.

While acknowledging "the problem of handgun violence in this country," the Supreme Court stressed that the "Constitution leaves . . . a variety of tools for combating that problem, including some measures regulating handguns. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home." *Id.* at 636 (emphasis added; citation omitted). The Supreme Court therefore recognized that the right to carry and bear arms under the Second Amendment is not unlimited. *Id.* at 626-627. Specifically, the Supreme Court stated that

nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [*Id.*]

Notably, the Supreme Court clarified in an accompanying footnote that in providing these examples, "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627 n 26. That language suggests and has been interpreted to mean that "the Second Amendment permits categorical regulation of gun possession by classes of persons—e.g., felons and the mentally ill . . . ." *United States v Booker*, 644 F3d 12, 23 (CA 1, 2011); see *United States v Skoien*, 614 F3d 638, 640 (CA 7, 2010) ("[S]tatutory prohibitions on the possession of weapons by some persons are proper—and, importantly for current purposes, that the legislative role did not end in 1791. That *some* categorical limits are proper is part of the original meaning, leaving to the people's elected representatives the filling in of details."); see also *United States v Yancey*, 621 F3d 681, 683 (CA 7, 2010) ("We have already concluded, based on our understanding of *Heller* and *McDonald*, that some categorical firearms bans are permissible; Congress is not limited to case-by-case exclusions.").

It follows that a statute, such as the one in this case, could fall within the categories of presumptively lawful regulatory measures.[2] Like the restrictions preventing felons, the mentally ill, or illegal drug users from

---

[2] Recently, a few federal courts have concluded that it is constitutionally permissible to prohibit individuals who have been convicted of a crime of domestic violence from possessing, shipping, or receiving firearms or prohibiting illegal drug users from firearm possession. *Booker*, 644 F3d at 22-26; *Skoien*, 614 F3d 640-641; *Yancey*, 621 F3d at 683-686.

possessing firearms because they are viewed as at-risk people in society who should not bear arms, individuals under the influence of alcoholic liquor may also pose a serious danger to society if permitted to possess or carry firearms because those individuals will have "difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Yancey*, 621 F3d at 685. At this juncture, assuming that the statute at hand is facially constitutional, *Yanna*, 297 Mich App at 145-146, the issue is whether the statute, as applied to defendant, is unconstitutional.

MCL 750.237(1), restricts the possession of a firearm as follows:

> An individual shall not carry, have in possession or under control, or use in any manner or discharge a firearm under any of the following circumstances:
>
> (a) The individual is under the influence of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance.
>
> (b) The individual has an alcohol content of 0.08 or more grams per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.
>
> (c) Because of the consumption of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance, the individual's ability to use a firearm is visibly impaired.

Turning to whether this statute is unconstitutional as applied, various United States Courts of Appeals, including the Sixth Circuit, have adopted the following two-pronged approach in addressing Second Amendment challenges:

> Under the first prong, the court asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. [*United States v Chester*, 628 F3d 673, 680 (CA 4,

2010).] As the Seventh Circuit recognized, *"Heller* suggests that some federal gun laws will survive Second Amendment challenge because they regulate activity falling outside the terms of the right as publicly understood when the Bill of Rights was ratified." [*Ezell v Chicago*, 651 F3d 684, 702 (CA 7, 2011).] If the Government demonstrates that the challenged statute "regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* at 702–[7]03.

"If the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at 703. Under this prong, the court applies the appropriate level of scrutiny. [*United States v Marzzarella*, 614 F3d 85, 89 (CA 3, 2010).] If the law satisfies the applicable standard, it is constitutional. *Id.* If it does not, "it is invalid." *Id.* [*United States v Greeno*, 679 F3d 510, 518 (CA 6, 2012).]

In applying this approach to the issue presented on appeal, the threshold inquiry is whether MCL 750.237 regulates conduct that falls within the scope of the Second Amendment right as historically understood. *Id.* at 518. The Second Amendment protects a "law-abiding" person's right to bear arms in his or her home as a means of self-defense. *Heller*, 554 US at 635. A right to possess a handgun in one's home as a means of self-defense is a constitutional right that is at the core of Second Amendment protection.

While Second Amendment rights are not unlimited, this conduct is protected. Aside from the statute at issue, defendant was not engaging in an unlawful

behavior and there was no evidence to suggest that defendant possessed the handgun for an unlawful purpose. Further, it was not established that this is a case in which someone was unlawfully allowed to own or possess a handgun in the first instance. Additionally, the prosecution has failed to establish that the conduct at issue has historically been outside of the scope of Second Amendment protection. *Greeno*, 679 F3d at 518. Given our earlier discussion, defendant's conduct fell within the protections of the Second Amendment. While the perceived danger associated with intoxicated individuals and handguns is real and important, these issues are addressed by analyzing the conduct under the second prong of the *Greeno* test as discussed below.

Upon finding that defendant's conduct falls within Second Amendment protections, the next inquiry is whether the government can justify by some standard of scrutiny the burden that it wishes to impose on defendant. While defendant argues that the appropriate standard of constitutional scrutiny should be strict scrutiny, the intermediate scrutiny standard is most appropriate.[3] Under this standard, the government bears the burden of establishing that there is a reasonable fit between the asserted substantial or important governmental objective and the burden placed on the individual. See *Marzzarella*, 614 F3d at 97-98. The prosecution has failed to meet this burden.

---

[3] Because the burden here does not amount to a severe burden on one's Second Amendment rights, i.e., a complete ban on possession of a firearm in one's home, but amounts instead to a lesser burden that relates to the manner in which a person may lawfully exercise his or her Second Amendment rights, as in First Amendment jurisprudence, intermediate scrutiny applies. See *Marzzarella*, 614 F3d at 95-98. Additionally, defendant has not presented any state or federal cases since *Heller* that used a strict scrutiny standard when evaluating Second Amendment challenges.

While preventing intoxicated individuals from committing crimes involving handguns is an important governmental objective, the infringement on defendant's right in the instant case was not substantially related to that objective. We initially note that at the time of the officers' entry into the home, and at the time they were actually able to establish the level of defendant's intoxication, defendant's possession was constructive rather than actual. Thus, to allow application of this statute to defendant under these circumstances, we would in essence be forcing a person to choose between possessing a firearm in his or her home and consuming alcohol. But to force such a choice is unreasonable. As the facts illustrate, there was no sign of unlawful behavior or any perceived threat that a crime involving a handgun would be committed. We note that the Legislature, in crafting the concealed-pistol-license statute, recognized both the concern with an intoxicated person carrying a firearm and that it is unnecessary to prohibit an intoxicated person from merely being in the vicinity of a firearm. Under MCL 28.425k(2), it is an offense for a person to carry a concealed pistol while under the influence of alcohol.[4] But MCL 28.425k(3) provides for the intoxicated person to have the pistol secured in a vehicle in which the person is an occupant without violating the provisions of subsection (2). In other words, the government's legitimate concern is not that a person who has consumed alcohol is in the vicinity of a firearm, but that the person actually has it in his or her physical possession.

---

[4] And we note that the blood alcohol level proscribed under the concealed-pistol statute is much lower than that under the statute prohibiting the possession of a firearm while intoxicated. Compare MCL 28.425k(2)(c) and MCL 750.237(1)(b).

In conclusion, the government cannot justify infringing on defendant's Second Amendment right to possess a handgun in his home simply because defendant was intoxicated in the general vicinity of the firearm. Accordingly, the district court did not err by holding that MCL 750.237, as applied to defendant, was unconstitutional.

Affirmed.

JANSEN, P.J., and SAWYER and FORT HOOD, JJ., concurred.