*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 22, 2024

Plaintiff-Appellee,

v

No. 365570
Wayne Circuit Court

CHARLES FEILER,

LC No. 21-003043-01-FC

Defendant-Appellant.

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree child abuse, MCL 750.136b(3), felon in possession of a firearm, MCL 750.224f, two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, and four counts of carrying a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b. Defendant was sentenced to first concurrently serve five years in prison for all of his convictions for felony-firearm, second offense. The court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 15 to 30 years imprisonment for child abuse, 6 to 30 years imprisonment for felon in possession of a firearm, and 5 to 15 years imprisonment for each felonious assault conviction, all of which were ordered to be served concurrently to each other and consecutively to the terms for felony-firearm. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The facts of this case involve a domestic dispute that escalated into an assault against multiple potential victims, including two adults and three children. On the evening of April 14, 2021, defendant and Ashley Greenwood argued after Greenwood asked defendant to fix her car. Defendant is the father of one of Greenwood's children, JG. Later that night, Greenwood and her sister, Aariah Haywood, went to defendant's house when he was not home, and Greenwood threw eggs at the house. Greenwood's two children, including JG, and Haywood's child were also with them.

-1-

Later that same night, Greenwood and Haywood, with the three children still with them, went back to defendant's house a second time, and Greenwood threw eggs at defendant's vehicle as he slept in the vehicle in front of his house. After defendant woke up, he and Greenwood verbally and physically fought, and Greenwood caused more damage to defendant's vehicle when she pulled off the bumper and threw a bottle at it.

The situation escalated when defendant retrieved a "long gun" from his house and threatened to shoot Greenwood and Haywood. Defendant put the gun back in the house, and the fighting between defendant and Greenwood continued. Defendant retrieved the weapon a second time and came out of the house with the gun raised. Greenwood testified that she felt scared at that point. She got back in her vehicle and drove away. There was testimony that defendant fired the gun three to five times at Greenwood's vehicle as she drove away. JG suffered a graze wound on her shoulder, and she was treated for her injury at the hospital.

Defendant was taken into custody on the following day during the early morning hours. During a subsequent police search of defendant's home, an assault rifle was found in the garage. There was forensic analysis testimony that a bullet recovered from inside Greenwood's vehicle was fired by the same model of assault rifle as the one seized from defendant's garage. It was concluded that the rifle could have fired the bullet seized from defendant's garage or another gun of the same model. Still, it could not be conclusively determined that the rifle seized from defendant's garage fired the bullet.

Defendant was convicted and sentenced as previously stated. This appeal followed.

## II. ANALYSIS

### A. SENTENCE ENHANCEMENT

Defendant first argues that the trial court erred as a matter of law by sentencing him to a term of 15 to 30 years imprisonment for his second-degree-child-abuse conviction because the statutory maximum punishment for that offense is ten years unless a defendant has previously been convicted of child abuse. The prosecution did not establish that defendant had a prior child-abuse conviction.

Under MCL 750.136b, there are four degrees of child abuse. Defendant was convicted of second-degree child abuse. MCL 750.136b provides in relevant part as follows:

> (3) A person is guilty of child abuse in the second degree if any of the following apply:
>
> (a) The person's omission causes serious physical harm or serious mental harm to a child, or if the person's reckless act causes serious bodily harm or serious mental harm to a child.
>
> (b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

* * *

(4) Child abuse in the second degree is a felony punishable by imprisonment as follows:

(a) For a first offense, not more than 10 years.

(b) For an offense following a prior conviction, not more than 20 years.

* * *

(12) As used in this section, "prior conviction" means a violation of this section or a violation of a law of another state substantially corresponding to this section.

However, defendant ignores that he was sentenced as a fourth-offense habitual offender under MCL 769.12, which provides in relevant part:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

* * *

(b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

Defendant's guidelines range for his second-degree child abuse conviction as a fourth-offense habitual offender was 62 to 228 months. Defendant was sentenced to 15-30 years' imprisonment for this offense. Defendant was asked at the sentencing hearing whether he had any objections to these determinations, and defendant specifically answered, "No."

Defendant did not demonstrate that any error occurred. Because a first conviction is punishable by a maximum term of 10 years imprisonment and the defendant was sentenced as a fourth-offense habitual offender, the court was authorized to sentence the defendant to "imprisonment for life or for a lesser term." MCL 769.12(1)(b). Defendant does not claim that there was any error in his status as a fourth-offense habitual offender. Defendant also has not cited any authority for the proposition that the habitual-offender statutes somehow do not apply to a conviction for second-degree child abuse. Our Supreme Court has generally explained that in enacting the habitual-offender statutes, "the legislature did not intend to make a separate

substantive crime out of being a habitual offender but rather, for deterrent purposes, intended to *augment the punishment for second or subsequent offenses*." *People v Allen*, 499 Mich 307, 316; 884 NW2d 548 (2016) (quotation marks and citation omitted; emphasis added). Defendant has not demonstrated in this case that there was any basis for prohibiting the trial court from augmenting defendant's sentence based on his prior convictions as authorized by MCL 769.12. We thus affirm the trial court's second-degree child abuse sentence.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next challenges the sufficiency of the evidence for his felonious assault convictions. Defendant was charged with five counts of felonious assault: one count for each of the five occupants of Greenwood's vehicle. The jury convicted defendant of felonious assault relative to Greenwood and Haywood, but the jury acquitted defendant of the three felonious assault counts relative to the three children. Defendant argues on appeal that his two felonious assault convictions must be reversed because there was insufficient evidence to prove beyond a reasonable doubt that he intended to harm only the two adult occupants of the vehicle and not the three children.

This Court reviews de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Under MCL 750.82(1), "a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . ."[1] "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted).

A simple criminal assault occurs when there has been "either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Grant*, 211 Mich App 200, 202; 535 NW2d 581 (1995) (quotation marks and citation omitted). A battery, in turn, is "the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *People v Morris*, 314 Mich

---

[1] Although MCL 750.82 has been amended since defendant was convicted and sentenced, the above quoted language has not changed and the amended language generally regarding assaults committed against health professionals or medical volunteers is not implicated by the facts of this case. See 2023 PA 272.

-4-

App 399, 410; 886 NW2d 910 (2016) (quotation marks and citation omitted). A felonious assault is therefore just "a simple assault aggravated by the use of a weapon," and "it includes the element of present ability or apparent present ability to commit a battery." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993).

Here, Greenwood testified that defendant came out of the house with the gun a second time and that this time, he had the gun raised. Greenwood further testified that at that point, she felt scared. Similarly, Haywood testified that she saw defendant with a gun pointed at the vehicle while she and Greenwood were inside, and Haywood also testified that defendant fired the weapon at that vehicle and that she was afraid for her life. There was testimony that defendant fired the gun three to five times at Greenwood's vehicle as she drove away.

Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that defendant intentionally placed Greenwood and Haywood in reasonable apprehension of an imminent battery using the assault rifle or intentionally attempted to commit a battery against the victims by firing the weapon at them, thus satisfying the elements of felonious assault. *Chambers*, 277 Mich App at 8; *Jones*, 443 Mich at 100. The evidence was sufficient to support defendant's convictions for felonious assault. *Wolfe*, 440 Mich at 515; see also *People v Avant*, 235 Mich App 499, 505-506; 597 NW2d 864 (1999) (holding that trial testimony indicating the defendant "pointed an assault weapon" at the victim's face while the victim was robbed was "sufficient for a reasonable factfinder to find that the elements of felonious assault . . . were established beyond a reasonable doubt").

Defendant's appeal of this issue is based on the argument that the jury reached inconsistent verdicts by finding him guilty of felonious assault in relation to the two adults but not guilty in relation to the three children. Even if we assume defendant's argument is true, it does not entitle him to relief because juries are allowed to reach inconsistent verdicts. *Speed*, 331 Mich App at 339. " 'Juries are not held to any rules of logic nor are they required to explain their decisions.' " *Id.*, quoting *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980).

## C. STANDARD 4 ISSUES

## 1. ARREST WARRANT AND PROBABLE CAUSE TO ARREST

In his Standard 4 brief,[2] defendant argues that his convictions should be overturned because he was not provided with a signed affidavit and a warrant for his arrest, making his arrest, in his opinion, without probable cause and illegal. Defendant makes several arguments related to this issue. However, defendant is essentially arguing that his convictions should be vacated because the prosecution was constitutionally prohibited from prosecuting him due to his arrest without a warrant and alleged lack of probable cause. Regardless of whether there is any validity to defendant's claim of a procedural defect in his arrest, he fails to address the fact that he was convicted following a trial by jury and he has not presented a compelling argument that his trial

---

[2] Submitted under Administrative Order No. 2004-6, Standard 4.

was fundamentally unfair. His complaints about the manner of his arrest do not provide a basis on which to vacate his convictions. This Court recently explained in rejecting a substantially identical argument:

> Finally, defendant also contends that fabricated evidence and false testimony of Detective Neher led to the issuance of the arrest warrant. Defendant appears to contend that because the arrest warrant was invalid, his convictions are void, and he requests a remand for a hearing on the evidence underlying the warrant. However, "a court's jurisdiction to try an accused person cannot be challenged on the ground that physical custody of the accused was obtained in an unlawful manner." *People v Burrill*, 391 Mich 124, 133; 214 NW2d 823 (1974). Indeed, "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Id*. at 133-134 (quotation marks and citation omitted). Defendant has failed to show that he was denied a fair trial; accordingly, irrespective of whether there were errors associated with the warrant, defendant is not entitled to relief. [*People v Muhammad*, 326 Mich App 40, 72; 931 NW2d 20 (2018).]

In *Burrill*, our Supreme Court explained

> However, contrary to [the defendant's] contentions, the invalidity of the arrest warrant did not oust the circuit court of jurisdiction. The sole sanction imposed by the United States Supreme Court for the invalidity of an arrest warrant has been the suppression of evidence obtained from the person following his illegal arrest.

> The Court has consistently held that a court's jurisdiction to try an accused person cannot be challenged on the ground that physical custody of the accused was obtained in an unlawful manner. In *Frisbie v Collins*, 342 US 519, 522; 72 S Ct 509; 96 L Ed 541 (1952), the Court declared:

> 'This Court has never departed from the rule announced in *Ker v Illinois*, 119 US 436, 444; 7 S Ct 225; 30 L Ed 421[ (1886)], that the power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.'

> On the rationale of *Frisbie v Collins* and the authority of the long line of cases . . ., we conclude that the invalidity of the arrest warrant in this case did not affect the court's jurisdiction to try [the defendant]. [*Burrill*, 391 Mich at 133-134.]

Here, defendant has not provided this Court with any evidence that he thinks should have been suppressed because of his supposedly illegal arrest. He has also failed to show that he is entitled to any relief on appeal, even if we were to accept his claims about the illegality of his arrest as true. *Id.*; *Muhammad*, 326 Mich App at 72. "An illegal arrest does not preclude the prosecutor from bringing a prosecution." *People v Spencley*, 197 Mich App 505, 508; 495 NW2d 824 (1992). We emphasize that we have not decided that defendant's arrest was actually illegal; we have merely decided that defendant in this case has not presented any argument that could possibly demonstrate entitlement to appellate relief under these circumstances. Accordingly, defendant is not entitled to relief on this issue.

Next, to the extent defendant also appears to claim there was a *Brady*[3] violation based on the alleged suppression of an arrest warrant and supporting affidavit, he has not explained how the evidence he claims was suppressed is material. "[T]he components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (citation omitted). "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted). In light of our analysis above, there is not a reasonable probability that the outcome of defendant's trial would have been different even if he could somehow uncover evidence showing that his arrest was somehow obtained in an unlawful manner. See *Burrill*, 391 Mich at 133-134. However, for purposes of the *Brady* rule, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 157 (quotation marks and citation omitted). Defendant complains vigorously about his arrest, but he has not attempted to explain or provide evidence showing how his trial was unfair. Defendant has thus abandoned this claim of error. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Muhammad*, 326 Mich App at 72 n 14 (quotation marks and citation omitted).

To the extent defendant has attempted to set forth additional arguments related to these issues, we are unable to discern from his brief any additional cogent theories under which he believes his perceived grievances entitle him to appellate relief that may be granted by this Court. Any additional such arguments are therefore also abandoned. *Id.*

## 2. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to support his conviction of second-degree child abuse.

---

[3] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

As previously stated, we review de novo a challenge to the sufficiency of the evidence supporting a conviction. *Speed*, 331 Mich App at 331. "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Wolfe*, 440 Mich at 515. "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *Unger*, 278 Mich App at 222.

MCL 750.136b(3) provides in relevant part as follows:

(3) A person is guilty of child abuse in the second degree if any of the following apply:

* * *

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.[4]

For purposes of this statute, a "child" is "a person who is less than 18 years of age and is not emancipated by operation of law . . . ." MCL 750.136b(1)(a). A "person," for purposes of this statute is "a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(d).

Defendant's appeal contends that JG did not sustain a bullet injury and questions the inconsistency of the jury's verdict. Defendant argues that while he was convicted of second-degree child abuse concerning JG, he was acquitted of charges related to assault with intent to murder, assault intending to cause great bodily harm, and felonious assault in connection to JG. Furthermore, defendant disputes his parental status, citing another man listed as JG's father on her birth certificate and JG's failure to identify the defendant as her father in court. Additionally, defendant asserts that there is no evidence establishing his care or custody of JG.

Defendant's arguments do not demonstrate that he is entitled to appellate relief. The evidence presented at trial, when viewed in a light most favorable to the prosecution, demonstrated that defendant was JG's father, and that he fired an assault rifle multiple times at the vehicle in which JG was riding. One of the bullets grazed JG, and she received treatment for her wound at the hospital. Based on this evidence, a rational fact finder could conclude that all the elements of MCL 750.136b(3) were proven beyond a reasonable doubt. *Wolfe*, 440 Mich at 515.

Evidence that defendant was JG's father is sufficient to bring defendant within the definition of "person" under the statute; it is not necessary to also show that he had custody of the child. MCL 750.136b(1)(d). The statute also does not require that harm resulted to the victim, MCL 750.136b(3)(b), although there was evidence that JG was physically harmed. Moreover, a

---

[4] This is the theory of the offense on which the jury was instructed.

rational jury certainly could find beyond a reasonable doubt that a parent firing a gun at a vehicle in which the parent's child was riding constitutes a knowing or intentional act "likely to cause serious physical or mental harm to a child." MCL 750.136b(3)(b); *People v Nix*, 301 Mich App 195, 202; 836 NW2d 224 (2013) (holding "that MCL 750.136b(3)(b) requires evidence that a defendant's act could probably result in serious harm to the child, regardless of whether the harm actually occurs"). Finally, as we have already noted, juries are not prohibited from reaching inconsistent verdicts, and an apparent inconsistency in the verdict is not a basis for invalidating a conviction. *Speed*, 331 Mich App at 339-340.

### 3. SECOND AMENDMENT

Next, defendant asserts, without explanation or supporting legal authority, that his convictions for felon in possession of a firearm and felony-firearm based on a gun found in his residence violated his rights under the Second Amendment.

However, "the right to carry and bear arms under the Second Amendment is not unlimited." *People v Deroche*, 299 Mich App 301, 306; 829 NW2d 891 (2013). This Court has held that the Second Amendment does not preclude categorical "restrictions preventing felons, the mentally ill, or illegal drug users from possessing firearms because they are viewed as at-risk people in society who should not bear arms." *Id*. at 307-308. The right to bear arms also "does not encompass the possession of a firearm during the commission of a felony." *People v Powell*, 303 Mich App 271, 273; 842 NW2d 538 (2013) (quotation marks and citation omitted).

Defendant thus has not established that the Second Amendment somehow prohibited his convictions for felon in possession of a firearm and felony-firearm. *Id*.; *Deroche*, 299 Mich App at 306-308; see also *District of Columbia v Heller*, 554 US 570, 626; 128 S Ct 2783; 171 L Ed 2d 637 (2008) ("Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."); *United States v Rahimi*, ___ US ___, ___; 144 S Ct 1889, 1899; ___ L ed 2d ___ (2024) ("From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."). Notably, the United States Supreme Court has also reiterated: "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Rahimi*, ___ US at ___; 144 S Ct at 1902, quoting *Heller*, 554 US at 626, 627 n 26.

To the extent defendant appears to assert—without further explanation or citation to legal authority—that it was not proven that the firearm was used in a crime, the trial evidence that defendant retrieved a long gun from inside his house, that he fired the gun multiple times at the victims' car, that the assault rifle was found in his garage after the crime, and that a bullet recovered from inside the vehicle was consistent with being fired by a gun of the same model as the one found in defendant's garage was sufficient for a rational jury to conclude beyond a reasonable doubt that the weapon was used in the crime. *Wolfe*, 440 Mich at 515.

### 4. SPEEDY TRIAL

Next, defendant argues that his right to a speedy trial was violated.

"A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted). Here, defendant admits in his Standard 4 brief that he did not make a formal demand on the record for a speedy trial, instead stating that he demanded a speedy trial "by implication" when he pleaded not guilty and proceeded to trial. Defendant does not cite any authority for the proposition that a speedy trial may be adequately demanded for preservation purposes "by implication," and any such argument is thus abandoned. *Muhammad*, 326 Mich App at 72 n 14. We review unpreserved claims of both constitutional and nonconstitutional errors for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Under the plain error test,

> three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." [*Id.* at 763-764 (citations omitted; alteration in original).]

A defendant's right to a speedy trial is guaranteed by both the federal and state constitutions, US Const, Am VI; Const 1963, art 1, § 20. This right is also enforced by statute and court rule. See MCL 768.1; MCR 6.004(A). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). A "defendant's right to a speedy trial is not violated after a fixed number of days." *Id.* Rather, a court is required to balance the following factors:

> (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. [*Id.* at 261-262.]

"Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262.

Here, defendant was arrested on April 16, 2021, and his trial began on January 23, 2023. That amounts to more than about 21 months, which is a presumptively prejudicial delay. *Id.* However, that presumption is not the end of the analysis but instead simply "triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id.*

Defendant on appeal does not make any serious attempt to analyze the reasons for the delay and, as we have already noted, defendant does not claim to have actually raised his speedy trial claim formally on the record until his appeal. Nonetheless, most importantly, defendant has not

explained how the delay prejudiced his defense. The prejudice prong "may properly weigh against a defendant incarcerated for an even longer period [than 19 months] if his defense is not prejudiced by the delay." *Id*. at 264. " '[O]n the matter of prejudice to defendant because of the length of time before his trial, the most important thing is that there is no evidence that a fair trial was jeopardized by delay, although obviously 27 months of incarceration is not an insignificant personal hardship.' " *Id*., quoting *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973).

Under these circumstances, defendant has failed to demonstrate plain error that affected the outcome of his trial. *Carines*, 460 Mich at 763-764.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant claims that he was denied the effective assistance of counsel.

"[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland v Washington*, 466 US 668, 688; 104 S Ct 205; 280 L Ed 2d 674 (1984). "Prejudice means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Randolph*, 502 Mich at 9, quoting *Strickland*, 466 US at 694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 US at 700.

Defendant argues that his trial counsel was ineffective for not calling certain witnesses he requested to provide testimony contesting the evidence of JG's injury and the validity of his arrest. However, it is important to note that the prosecution was not obligated to prove JG's actual injury to support defendant's convictions. Additionally, any deficiencies in the arrest, if present, did not prevent defendant's prosecution. Defendant has not presented any argument demonstrating how introducing this evidence would have significantly impacted the outcome of his trial. Hence, he has not established this claim of ineffective assistance of counsel. *Strickland*, 466 US at 700; *Randolph*, 502 Mich at 9.

Defendant also asserts that his counsel was ineffective for failing to challenge his arrest warrant, but he does not explain how such a challenge would have been successful. He also has not demonstrated a reasonable probability that the outcome of his trial would have been different had this challenge been pursued, and so he has also failed to establish this claim of ineffective assistance of counsel. *Strickland*, 466 US at 700; *Randolph*, 502 Mich at 9. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Muhammad*, 326 Mich App at 72 n 14 (quotation marks and citation omitted).

Defendant also claims that his counsel was ineffective for advising him that delays attributable to the COVID-19 pandemic did not provide grounds for a speedy trial claim. Defendant also does not explain how this had any effect on the outcome of his trial. Moreover, this Court has recently held that "delays caused by the COVID-19 pandemic are not attributable to the prosecution when evaluating a speedy-trial claim." *People v Smith*, ___ Mich App ___, ___;

___ NW3d ___ (2024) (Docket No. 362114); slip op at 1. Defendant thus has not established the requisite prejudice to support his ineffective assistance of counsel claim on this ground either. *Strickland*, 466 US at 700; *Randolph*, 502 Mich at 9.[5]

      Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani

---

[5] To the extent defendant attempts to assert other claims of ineffective assistance of counsel, we are unable to discern the basis for his alleged claim of error, and these additional claims are thus abandoned. *Muhammad*, 326 Mich App at 72 n 14.