*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOELL LAWRENCE HANKS II,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2024
1:52 PM

No. 365790
Eaton Circuit Court
LC No. 2022-020171-FH

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

Defendant, Joell Hanks II, appeals as of right his conviction of being a felon in possession of ammunition, MCL 750.224f(7). For the reasons set forth in this opinion, we affirm.

## I. BASIC FACTS

In March 2022, the police received a telephone call from Hanks II's former girlfriend, who sounded "kinda panicked" and "genuinely afraid" of Hanks II's presence in her apartment. During the call, Hanks II's former girlfriend advised that Hanks II had a gun. The police responded to the scene and observed Hanks II leaving in a white SUV. A traffic stop was initiated. During the stop, Hanks II acknowledged that he was a felon and he confirmed that the SUV was his vehicle. He additionally stated that a gun case on the floorboards was his, but that it only contained "tools." The officers searched his vehicle and, relevant to this appeal, located ammunition underneath the front passenger seat. Following a jury trial, Hanks II was convicted of being a felon in possession of ammunition.

## II. CONSTITUTIONAL RIGHTS

### A. STANDARD OF REVIEW

Hanks II argues that MCL 750.224f is unconstitutional on its face and as applied to him. Because Hanks II did not raise this issue in the trial court, we review his unpreserved claim of constitutional error for plain error affecting his substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to prevail, Hanks II must show that an error occurred,

that the error was clear or obvious, and that it affected his substantial rights by affecting "the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

## B. ANALYSIS

The United States Constitution and the Michigan Constitution both "grant individuals a right to keep and bear arms for self-defense." *People v Yanna*, 297 Mich App 137, 142; 824 NW2d 241 (2012). Yet, that right is not without limits. *District of Columbia v Heller*, 554 US 570, 626; 128 S Ct 2783; 171 L Ed 2d 637 (2008); *People v Powell*, 303 Mich App 271, 273; 842 NW2d 538 (2013). Indeed, in *Heller*, the United States Supreme Court stated that

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [*Heller*, 554 US at 626-627.]

Similarly, this Court has held that exceptions to the right to bear arms include regulation of gun possession by felons. *Powell*, 303 Mich App at 273.

Hanks II first argues that MCL 750.224f is facially unconstitutional. We disagree. This Court has held that MCL 750.224f was not facially unconstitutional. See *People v Swint*, 225 Mich App 353, 363; 572 NW2d 666 (1997) (holding that the Michigan constitution does not "guarantee [a felon] the right to possess a firearm after [he or she] is convicted of a felony."); and *People v Deroche*, 299 Mich App 301, 307-308; 829 NW2d 891 (2013) (holding that restrictions on preventing felons from possessing firearms are presumptively lawful and not facially unconstitutional because felons are "at-risk people in society who should not bear arms.").

Hanks II notes, however, that in *New York State Rifle & Pistol Ass'n v Bruen*, 597 US 1; 142 S Ct 2111; 213 L Ed 2d 387 (2022), the United States Supreme Court set forth a new framework to determine whether a firearms restriction is unconstitutional. The *Bruen* Court held that

> when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command. [*Id.* at 17 (quotation marks and citation omitted).]

-2-

Hanks II contends that prohibiting felons from possessing and carrying firearms is an outright restriction on a felon's Second-Amendment rights and, therefore, requires a historical analysis under *Bruen*.

*Bruen* did not address directly whether felon-in-possession statutes were or were not constitutional. See *Bruen*, 597 US 1. However, the *Bruen* Court repeatedly referenced the Second Amendment rights of "law-abiding" citizens. See *Bruen*, 597 US at 9, 26, 29, 30, 60, 70. Moreover, Justices Kavanaugh and Breyer reiterated that the right to bear arms was not unlimited and pointed to *Heller*'s holding regarding the prohibition on the possession of firearms by felons). *Id*. at 81 (Kavanaugh, J., concurring); *Id*. at 129-130 (Breyer, J., dissenting). Likewise, Justice Alito clarified in a concurring opinion:

> Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald v Chicago*, 561 U S 742, 130 S Ct 3020, 177 L Ed 2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns. [*Id*. at 72 (Alito, J., concurring).]

On appeal, Hanks II argues that the concurring and dissenting opinions in *Bruen* are non-instructive dicta. In support, he directs this Court to *Range v Attorney General of the United States of America*, 69 F4d 96 (CA 3, 2023), judgment vacated *Garland v Range*, ___ US ___ (2024). But that opinion was vacated by the United States Supreme Court and remanded for reconsideration in light of that Court's decision in *United States v Rahimi*, 602 US ___, ___ ; 144 S Ct 1889, 1902; ___ L Ed 2d ___ (2024). *Garland v Range*, ___ US ___; 144 S Ct 2706 (2024). As a result, it has been deprived of its precedential effect. See *O'Connor v Donaldson*, 422 US 563, 578 n 12; 45 L Ed 2d 396; 95 S Ct 2486 (1975) ("[O]ur decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case.").

In *Rahimi*, the United States Supreme Court clarified that felon-in-possession statutes are "presumptively lawful." *United States v Rahimi*, 602 US ___, ___ ; 144 S Ct 1889, 1902; ___ L Ed 2d ___ (2024) (quotation marks and citation omitted). The Court in *Rahimi* considered the constitutionality of the federal felon-in-possession statute, which barred an individual from possessing a firearm if their restraining order includes a finding that they pose "a credible threat to the physical safety" of a protected person, 18 USC 922(g)(8)(C)(*i*), or if the restraining order "prohibits the use, attempted use, or threatened use of physical force," 18 USC 922(g)(8)(C)(*ii*). The *Rahimi* Court noted that the statute, unlike the New York statute at issue in *Bruen*, only burdened an individual's Second Amendment right after a court had found them to pose a credible threat to the physical safety of others. *Rahimi*, 602 US at ___; 144 S Ct at 1901-1902. Additionally, the *Rahimi* Court recognized that similar restrictions existed throughout the nation's tradition of firearm regulation in the form of surety and "going armed" laws. *Id*. at ___; 144 S Ct at 1899-1901. Ultimately, the *Rahimi* Court held that the federal felon-in-possession statute was not unconstitutional given that "the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Id*. at ___; 144 S Ct at 1898.

Even applying *Bruen*'s framework to MCL 750.224f, it is clear that the statute "is consistent with the Nation's historical tradition of firearm regulation." See *Bruen*, 597 US at 24. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.' " *United States v Yancey*, 621 F 3d 681, 684–85 (CA 7, 2010), quoting *United States v Vongxay*, 594 F 3d 1111, 1118 (CA 9, 2010). Consistent with this concept, felons were considered "unvirtuous" and excluded from the right to bear arms. *Yancey*, 621 F 3d at 684-685. Some American colonies adopted the concept of attainder, which could result in the loss of civil rights or the forfeiture or property, and applied it to disarm certain groups. *United States v Coombes*, 629 F Supp 3d 1149, 1157 (ND Okla, 2022). Attainder statutes constitute "historical analogues" to felon-in-possession statutes as they reflect regulations intended to protect the virtuous members of society from the less virtuous. *Id*. at 1158 (quotation marks and citation omitted).

Following the nation's independence, Anti-Federalists ("advocates of broad individual and state rights") proposed a constitutional amendment that would limit the right to bear arms for those who had committed crimes or posed a danger to the public. *Id*. (quotation marks and citation omitted). Further, as the *Rahimi* Court noted, surety and going armed laws were also instituted in the founding era to prevent violence and prevent the misuse of firearms. *Rahimi*, 602 US at ___; 144 S Ct at 1899-1900. These laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at ___; 144 S Ct at 1901.

MCL 750.224f restricts firearm and ammunition possession for persons convicted of violations of state or federal law punishable by imprisonment of four years or more, MCL 750.224f(9)(b), and persons convicted of a "specified felony," MCL 750.224(10). In light of this history, it is clear that MCL 750.224f's restrictions are consistent with the nation's historical tradition of regulating firearm possession by felons. See *Bruen*, 597 US at 24.

For the foregoing reasons, we conclude that Hanks II's facial challenge to the constitutionality of MCL 750.224f is without merit.

Hanks II next argues that MCL 750.224f is unconstitutional as it is applied to him. We again disagree. An as-applied challenge to the constitutionality of a statute alleges "a present infringement or denial of a specific right[,] or of a particular injury in process of actual execution' of government action." *Wilder*, 307 Mich App at 556 (quotation marks and citation omitted).

MCL 750.224f imposes restrictions on the right to possess firearms and ammunition. The statute provides that persons convicted of a felony shall not possess or use a firearm or ammunition until the expiration of three years after the following circumstances exist: (1) the person has paid all fines imposed for the violation; (2) the person has served all terms of imprisonment imposed for the violation; and (3) the person has successfully completed all conditions of probation or parole imposed for the violation. MCL 750.224f(1), (3). The statute also provides that persons convicted of a "specified felony" cannot use or possess firearms or ammunition until the expiration of five years after the same requirements are met. MCL 750.224f(2), (4).

The purpose behind the state's felon-in-possession statutes is "to ensure that those persons who are more likely to misuse firearms do not maintain ready possession of them." *People v*

*Dupree*, 284 Mich App 89, 106; 771 NW2d 470 (2009). In enacting MCL 750.224f, the Legislature "made the determination that felons, who have exhibited their disregard for ordered society and pose a threat to public safety, and firearms are a lethal combination-at least for three to five years after a felon successfully completes his term of incarceration and probation and pays all requisite fines." *Swint*, 225 Mich App at 374.

Hanks II argues that MCL 750.224f is unconstitutional as applied to him because it effectively prevents him from ever having his Second Amendment rights restored. However, MCL 750.224f allows Hanks II, and other defendants convicted of specified felonies, to possess firearms and ammunition after five years if they have paid all associated fines, served the terms of their imprisonment, and complied with the terms of their parole or probation. See MCL 750.224f(2), (4). Hanks II, acknowledges that his criminal record includes three specified felonies, and that he did not successfully complete his probation for two of those felonies. However, he overlooks that he *could* have had his right to possess firearms and ammunition restored if he had complied with the statute. See MCL 750.224f(2), (4). Hanks II, has not provided any caselaw to support his position that his voluntary noncompliance with the requirements of MCL 750.224f renders it unconstitutional as applied to him, a felon who twice failed to comply with the terms of his probation.

Hanks II, further argues that, even had he complied with the terms of his probation, the length of time he would have to wait before being able to legally possess a firearm or ammunition would violate his Second Amendment rights. While Hanks II, argues that the Founding Fathers never intended for people to be disarmed for unreasonable periods of time, he provides no caselaw to support this assertion. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Consequently, we conclude that this portion of Hanks II's argument is abandoned on appeal.

For the foregoing reasons, we conclude that Hanks II's as-applied challenge to the constitutionality of MCL 750.224f is without merit.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett